(February 4, 1911.)

STATE, Appellant, v. E. M. HOOVER, Respondent.

[113 Pac. 455.]

'APPEAL from the District Court of the Third Judicial District, in and for Ada County. Hon. Fremont Wood, Judge.

Agreed statement of facts submitted to trial court as to the validity of a sale of certain state lands. Judgment sustaining the validity of the sale from which the state appeals. *Affirmed.*

D. C. McDougall, Attorney General, J. H. Peterson and O. M. Van Duyn, for Appellant.

At this time the state of Idaho has no title, right or interest in or to any timber now situate upon such lands, but only a right by reversion of any timber that may remain upon such lands at the expiration of such term of twenty years.

The great majority of the cases hold that the title to the timber not removed reverts to the owner of the land, but some of the cases hold that the buyer has no right of entry after the time specified. The practical effect of the two lines of decision is the same. (*Strasson v. Montgomery,* 32 Wis. 52; *King v. Merriman,* 38 Minn. 47, 35 N. W. 570; *Pease v. Gibson,* 6 Me. 81; *Howard v. Lincoln,* 13 Me. 122.)

The state has no interest in the timber involved in this matter, as and apart from the land on which it stands. The timber cannot revert unless the company voluntarily elects not to cut it. And a mere possibility not coupled with an interest cannot be transferred. (Rev. Codes, sec. 3097; *Nicoll v. N. Y. & E. R. Co.*, 12 N. Y. 121.)

Richards & Haga, for Respondent.

The deed from the state to Musser conveys only the timber which he may cut and remove within the twenty years following the date of the deed. The title to the timber that may remain at the end of such period is still in the state. (*Webber v. Proctor*, 89 Me. 404, 36 Atl. 631; *Pease v. Gibson*, 6 Me. 81.)

The purchaser under such deed has no ownership of the timber as long as the trees are attached to the realty. (*Fletcher v. Livingston*, 153 Mass. 388, 26 N. E. 1001; *Ford L. & Mfg. Co. v. Cress*, 132 Ky. 317, 116 S. W. 710; *Lehtonen v. Marysville W. & R. Co.*, 50 Wash. 359, 97 Pac. 292.)

Sec. 8, art. 9, of the state constitution provides "that not to exceed twenty-five sections of school lands shall be sold in any one year, and to be sold in subdivisions of not to exceed one hundred and sixty acres to any one individual, company or corporation."

The term "school lands" refers to lands granted for educational purposes, and would include the lands granted for the support and maintenance of the public educational institutions mentioned in secs. 10 and 11 of the Admission Bill. To limit the constitutional provision above mentioned to secs. 16 and 36 and lands selected in lieu thereof, would restrict the provision so as to remove practically all constitutional protection or control over the sale and disposal of a large part of the lands granted to the state by the federal government for educational purposes. There can be no justification for limiting the restriction to one class of school lands and not extending it to all lands granted to the state for school or educational purposes. (*State v. Maynard*, 31 Wash. 132, 71 Pac. 775.)

Hugh E. McElroy, *Amicus Curiae*.

There can be no sale of timber land, where a twenty-year license has been given for the removal of timber, prior to the expiration of this license, since the property interest of the state is not susceptible of appraisement.

Sec. 1569 provides for the appraisement of the land and the timber thereon "either separately or together." Now, the interest in the timber must be appraised, and if incapable of appraisement, it can no more be appraised *with the land* than *separately* from it. But how is it possible to make a legal appraisement of an interest in property which cannot be identified? (*Ferguson v. McCowan*, 124 Ga. 669, 52 S. E. 886.)

If the state officers were authorized to quitclaim the interest of the state without *appraisement*, the interest might be transferred, but not otherwise.

We are unable to learn whether this sale was made pursuant to sec. 1580 or 1599, Rev. Codes, but neither of said sections authorizes a sale of timber lands for only ten per cent cash payment, as was stated in the notice of sale in this case.

Frank Martin et al., *Amici Curiae*.

It was the intention of the makers of the constitution to include all lands of the class and for the purposes named in the constitution within the proviso at the end of sec. 8, art. 9. (*Roach v. Gooding*, 11 Ida. 244, 81 Pac. 642.)

When we consider carefully the statutes enacted by the legislature for the sale and disposition of state lands and timber, there seems to be some conflict, but, running through them all, there would seem to be the following intentions:

1. That state lands and state timber should be appraised separately and sold separately or, where appraised together, that a definite appraisement should be made of each and the two appraisements added together in determining the final value. (Rev. Codes, sec. 1569.)

2. That not more than 160 acres shall be sold to any one individual. Besides the provisions of the state constitution,

sec. 1579 provides for offering the land in legal subdivisions of not more than 160 acres.

3. That, where land is unfit for agriculture, but is timber land, the land itself shall not be sold but shall be retained by the state for the purpose of protecting its forests and its watersheds. (Sec. 1588.)

This and subsequent sections provide a system for disposing of the timber on lands which will not, when cleared of trees, be suitable for cultivation and raising crops. Why these elaborate means of disposing of timber if the state board may simply advertise and sell the land and the timber together, the same as ordinary lands of the state, as is attempted to be done in this case? Any other view of the provisions contained in art. 1, chap. 3, of the Political Code, sec. 1588 to 1598, makes them meaningless and purposeless. It is even provided in sec. 1596 that no lands contemplated in those sections shall be leased for any purpose that will injure the growing trees.

The notice, as given in this sale under consideration, and which was followed in the contemplated sale, involved in the case of *Pike v. The State Board,* does not comply with the provisions of sec. 1580, in this, that these notices provide for a payment at date of sale and the balance to be paid in sixteen annual instalments, while sec. 1580 provides, "Timber lands and lands chiefly valuable for timber, cash on the day of sale." Then it goes on to provide in case of other lands, payment of a certain amount on date of sale and the balance in annual instalments. The record in this case abundantly shows that the lands involved in the sale are timber lands and lands chiefly valuable for timber.

It is true that sec. 1599 and subsequent sections are in apparent conflict with this section, but the last section of that enactment provides that none of its sections shall be construed as changing or modifying any other statute relative to the sale of timber or timber lands. (Sec. 1603.)

In this case at bar, the record is silent as to the actual value of the lands in question. So far as appears, they may be worthless for any purpose, or they may be the most valuable.

within the state of Idaho. In either case, they must be sold in such manner as to obtain the *"maximum possible amount therefor."* How shall this be accomplished? Certainly not by private sales, for in that manner the amount received would depend entirely on the circumstances of the particular case, and might or might not be the "maximum possible amount." It is plain that such result can be obtained only by open, free and unrestricted competitive bidding.

The term "public auction" has long had a well-defined legal significance. (*Russell v. Miner,* 61 Barb. (N. Y.) 534, 539; 1 Words & Phrases, 637; *Hibler v. Hoag,* 1 Watts & S. (Pa.) 552.)

In the case at bar, the purported auction was of land in the possession of one Musser, and to which possession he was entitled at the date of sale, for a further period of thirteen years. Could the public at large, or a given individual, enter into competition in the bidding on an equal footing with Musser? Plainly not. Such a one would receive nothing whatever but the naked title, and would be required to wait thirteen years before enjoying the use and benefit of his purchase.

"Where a private bargain is made beforehand between the party who wishes to buy and the person authorized to sell, as to the price and other incidents of a contract, that the forms of a public sale with competition are invoked to give effect to a private bargain does not constitute a public auction." (*Porter v. Graves,* 104 U. S. 171, at p. 174, 26 L. ed. 691.)

If lands of small value may be sold under the forms of a public auction which is in truth a hollow mockery, so, then, may the most valuable lands in the domain of the state be encumbered in like manner, and sold at great loss to the people of the state. Public policy demands that all lands shall be disposed of in such manner as to encourage and stimulate the founding of homes and the cultivation of the soil, rather than the establishment of large landed estates, developed solely for pecuniary profit at the hands of a few individuals and corporations. Sales of the public domain held under

such conditions as the one in question can in no wise attain this end; since the individual citizen in search of a few acres of the soil for the residence and sustenance of those dependent upon him is absolutely excluded from the competitive bidding intended under the constitution.

AILSHIE, J.—This is an appeal from a judgment of the district court which sustains the validity of a sale made by the state of about 10,400 acres of state lands. All of the questions raised in this case are considered and disposed of in the case of *Pike v. State Board of Land Commissioners, ante,* p. 268, 113 Pac. 447, decided by this court at the present term. It is therefore unnecessary to further review or consider those questions in this case. Upon the authority of *Pike v. State Board of Land Commissioners,* the judgment in this case should be affirmed, and it is so ordered.

Stewart, C. J., and Sullivan, J., concur.